`Alexandria

GLORIA CAGE

v.

HARRISONBURG DEPARTMENT OF SOCIAL SERVICES

No. 1946-90-4

Decided October 29, 1991

COUNSEL

Richard A. Baugh (Tish E. Lynn; Clark & Bradshaw, on briefs), for appellant.

L. Quinn Kaylor, for appellee.

OPINION

BRAY, J.—Gloria Cage (Cage) appeals from an order terminating her parental rights to her four children. She contends that: (1) the Harrisonburg Department of Social Services (the Department) failed to prove that termination was in the children's best interests; and (2) notwithstanding the termination of her rights, the circuit court erred in denying her continued contact with the children following adoption.

The court rendered its decision in accordance with Code § 16.1-283(C), which provides, *inter alia*:

The residual parental rights of a parent . . . of a child placed in foster care as a result of . . . an entrustment agreement entered into by the parent . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

2. The parent . . . , without good cause, ha[s] been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reason-

able and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Cage concedes that the Department presented sufficient evidence to satisfy the requirements of Code § 16.1-283(C)(2) but argues that there was no evidence with respect to the children's "best interests." Absent such evidence, she contends that the statutory prerequisites to termination were not fully met and the court erred in its order.

The record clearly reflects that the trial court heard evidence of Cage's inability to provide basic necessities for the children and unwillingness to address her lack of parenting skills. At the inception of Department care, the children were sick and developmentally delayed in several areas. The foster parents were very attentive to the children's emotional, physical and other needs, while the mother visited so infrequently that the children regarded the foster mother as their parent. Test scores administered less than one year after placement reflected significant general improvement in the children's performance.

This evidence was obviously material to the court's determination that Cage failed to remedy those conditions which originally justified the foster care placement and to its consideration of the children's best interests. Nothing in the statutory scheme requires the court to segregate evidence which is at once relevant to *both* of these issues.

This evidence, and all reasonable inferences therefrom, must be viewed on appeal in that light most favorable to the prevailing party below. *Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). "Where, as here, the court hears evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Id.* Giving proper deference to the trial court's conclusions from the evidence in this cause, we affirm its findings and order.

Cage further argues that a modified, "open adoption" is preferable to complete termination and would best serve the children's interests. She defines "open adoption" as

a situation where the adoptive parents and the natural mother agree to terms by which the natural mother can maintain contact with her children, at the discretion of the adoptive parents. The adoptive parents would not be under any legal obligation to allow the natural mother to visit or continue visits.

■ The relevant termination and adoption statutes, however, do not contemplate this proposal. The Department obtained custody of the children by way of entrustment agreements signed by Cage on January 26, 1989. Pursuant to Code § 63.1-220.2,. a child entrusted to the Department's care may be placed for adoption "when the order of commitment or the entrustment agreement between the parent or parents and the agency or board provides for *the termination of all parental rights and responsibilities* with respect to the child for the purpose of placing and consenting to the adoption of such child." (emphasis added). It is apparent that termination is necessary to an adoption placement.

■ Nevertheless, Cage asserts a "right" with respect to the children, notwithstanding the termination of all parental rights. Code § 16.1-228 expressly provides:

"Residual parental rights and responsibilities" means *all* rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including but not limited to the right of visitation, consent to adoption, the right to determine religious affiliation and the responsibility for support.

(emphasis added). *See also Martin*, 3 Va. App. at 20, 348 S.E.2d at 16 ("When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes 'a legal stranger to the child.'" (quoting *Lowe v. Richmond Dep't of Public Welfare*, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)).

Moreover, following adoption, Cage would be divested by statute of "all legal rights and obligations in respect" to the children and the children are "free from all legal obligations of obedience and maintenance in respect" to her. Code § 63.1-233. The children become, "to all intents and purposes," children of the adoptive parents. *Id.* Such language does not accomodate "open

adoption."

The proposal advocated by Cage thus conflicts with the statutory concepts of both termination and adoption and the legislature's obvious intent. Accordingly, the trial court correctly refused her request.

*Affirmed.*

Duff, J., and Moon, J., concurred.