836 P.2d 167 (1992)
114 Or. App. 549
In the Matter of the Visitation of Joshua D. Grant, dob 3/03/81.
STATE of Oregon ex rel. Elery GRANT, Respondent, and
Alina Rae (Grant) KEEGAN, Appellant.
90-CV-0241-MS; CA A70127.
Court of Appeals of Oregon.
Argued and Submitted March 9, 1992.
Decided August 12, 1992.
Reconsideration Denied November 4, 1992.
D. Richard Hammersley, Newport, argued the cause, for appellant. With him on the briefs were Steven E. Herron, Certified Law Student, and Litchfield, Carstens & Hammersley, Newport.
Ronald L. Bryant, Redmond, argued the cause, for respondent. With him on the brief were Denise Frisbee and Bryant, Emerson & Fitch, Redmond.
Before BUTTLER, P.J., and ROSSMAN and De MUNIZ, JJ.
BUTTLER, Presiding Judge.
This is an appeal from a judgment enforcing an order for grandparent visitation with a 10-year-old child. We reverse.
The child was born to Lane Grant and Alina Grant (mother), who were then husband and wife, on March 3, 1981. In May, 1982, the court dissolved the marriage and granted custody of the child to mother. In November, 1982, mother married Charles Keegan; the two raised the child as if he were their natural child. In January, 1990, Lane died. In June, 1990, Elery Grant, Lane's father and the child's paternal *168 grandfather (petitioner), filed a petition for grandparent visitation pursuant to ORS 109.121. On November 15, 1990, mother and Keegan filed a petition for the adoption of the child. On November 30, 1990, an order was entered granting visitation rights to petitioner. On December 12, 1990, a different judge in the same county entered a decree of adoption.
Mother refused to honor petitioner's visitation rights, and, in March, 1991, he moved for an order to show cause why mother should not be held in contempt for failing to comply with the visitation order. In May, 1991, he moved for an order to enforce visitation. The two motions were consolidated for hearing, and the court entered a "Judgment and Order enforcing Grandparent Visitation," from which mother appeals.
Mother contends that, pursuant to ORS 109.041(1)(b), the adoption decree terminated petitioner's rights and obligations as a grandparent and, along with that, his right to visitation. ORS 109.041 provides:
"(1) The effect of a decree of adoption heretofore or hereafter granted by a court of this state shall be that the relationship, rights and obligations between an adopted person and the descendants of the adopted person and
"(a) The adoptive parents of the adopted person, their descendants and kindred, and
"(b) The natural parents of the adopted person, their descendants and kindred shall be the same to all legal intents and purposes after the entry of such decree as if the adopted person had been born in lawful wedlock to the adoptive parents and had not been born to the natural parents.

"(2) Where a person has been or shall be adopted in this state by a stepparent, this section shall leave unchanged the relationship, rights and obligations between such adopted person and descendants of the adopted person and natural parent of the adopted person, who is the spouse of the person who adopted the person, and the descendants and kindred of such natural parent." (Emphasis supplied.)
Petitioner is "kindred" of the child's natural father, as the term is used in ORS 109.041.[1] Under the statute, after the entry of the adoption decree, the relationship, rights and obligations between the child and petitioner are "the same to all legal intents and purposes * * * as if the adopted person had been born in lawful wedlock to the adoptive parents and had not been born to the natural parents." See Hood v. Hatfield, 235 Or. 38, 383 P.2d 1021 (1963).[2]
The question is whether, after the death of the child's natural father and the child's adoption by the husband of his natural mother, petitioner's rights to visitation under the preexisting visitation order were altered. ORS 109.121 provides, in part:
"A child's grandparent may, upon petition to the circuit court, be granted an order establishing reasonable rights of *169 visitation between the grandparent and the child * * *."
The statute does not mention whether visitation rights would be affected by the adoption of the grandchild. Neither does it make a distinction between "legal" and natural grandparents, although it expressly provides that stepgrandparents are not "grandparents" as used in the statute.[3] We conclude, however, that the statute contemplates visitation only by those having the legal status of grandparents. See Mickey v. Beinhauer, supra, n. 1, 100 Or.App. at 532, 786 P.2d 1317.
Petitioner argues that, because he did not receive notice of the adoption, his rights under the visitation order are not affected by the adoption judgment. Assuming, as he contends, that his preexisting visitation rights are legal rights that cannot be extinguished without notice and an opportunity to be heard, the hearing in this proceeding provided him that opportunity. Although the trial court, in its order enforcing petitioner's visitation rights, recited the lack of notice, it also held that petitioner's visitation rights were "not extinguished or terminated by the stepparent adoption," because the natural father had died and there had been "no consent, relinquishment or termination of the deceased natural parent's rights allowing stepparent adoption." The court went on to hold that the child's visitation with petitioner pursuant to the order was in the child's best interests and enforced the order.
There are cases in other jurisdictions that have distinguished between an adoption based on the consent of the natural parent or on the termination of the natural parent's rights and a stepparent adoption after the death of the natural parent. See Preston v. Mercieri, 133 N.H. 36, 573 A.2d 128 (1990); Mimkon v. Ford, 66 N.J. 426, 332 A.2d 199 (1975). Although those and other cases cited by petitioner make reasonable and, perhaps, desirable policy arguments in support of the distinction, we believe that it is for the legislature to make those policy decisions. It has not done so. Rather, it has declared that, after an adoption, the relationship and rights of the natural parents and their kindred shall be the same as if the adopted person had been born to the adoptive parents and had not been born to the natural parents.[4]
Therefore, we conclude that the trial court erred in ordering enforcement of the visitation order.
Reversed.
DE MUNIZ, Judge, concurring.
I agree with Judge Buttler's opinion. I write separately only to address the dissent, which ignores a statutory result because it prefers a different policy. Policy determinations are for the legislature, and the dissent's implication that it is within our province to dictate policy is wrong.
Coining a clever phrase, such as "[t]his is no way to treat a grandfather," 114 Or. App. at 554, is no substitute for recognizing and acknowledging the difficult and competing interests that the legislature confronts in determining which "family" ties will receive legal recognition and in what contexts. Those interests were presumably considered when the legislature chose to protect the rights of a person who has established a parent-child relationship under ORS 109.119, on which the dissent relies, and to allow a grandparent to petition for visitation under ORS 109.121. Neither of those statutes assists petitioner here, because he no longer has the legal status of grandparent. If that result is to be changed, the legislature must make the decision. The competing interests surrounding that issue, which are represented here by mother and petitioner, must be addressed to that forum.
*170 ROSSMAN, Judge, dissenting.
This is no way to treat a grandfather and, perhaps more significantly, this is no way to treat a grandchild when a trial court has previously determined that it is in that child's best interests to maintain a visitation relationship with his grandfather.
For the first time, this court is faced with the question of whether a biological grandfather with established visitation rights can have those rights nullified purely on the basis of a stepparent's subsequent adoption of the child. The majority relies on Mickey v. Beinhauer, 100 Or.App. 529, 532, 786 P.2d 1317, rev. den. 310 Or. 121, 794 P.2d 793 (1990), in which the issue was "whether the legislature intended that a natural paternal grandparent be able to petition for grandparent visitation rights under ORS 109.121 after the parental rights of the natural father, the grandparent's son, have been terminated." 100 Or. App. at 531, 786 P.2d 1217. We held only that a grandparent's right to petition for visitation rights under ORS 109.121 was abolished when the parent's rights were terminated. We did not hold that a grandparent cannot enforce an existing visitation order when the grandchild is subsequently adopted by a stepparent.
It is strange to hold that ORS 109.041, which does no more than define the general effect of adoptions, bars a trial court from enforcing grandparent visitation rights that are in the best interests of the child. I cannot believe that ORS 109.041, enacted in 1953, was intended to have such a devastating effect on the grandparent rights statute, ORS 109.121, which was enacted in 1979. The majority's holding is all the more questionable in the light of ORS 109.119, which provides that "[a]ny person * * * who has established emotional ties creating a child-parent relationship" may petition for visitation rights and be granted those rights if it is "in the best interest of the child." ORS 109.119(1). (Emphasis supplied.) That statute, enacted in 1985, is an obvious exception to the rigid rule of ORS 109.041 and exemplifies the Oregon Legislature's recognition that the maintenance of certain relationships is important to a child's healthy development.
ORS 109.041(1)(b) tells us that an adoption cuts off a biological parent's rights, but it does not require us to obliterate a child's entire family background. Neither does it tell us that there are exceptions to its rule, yet even the majority acknowledges that exceptions do exist. 114 Or. App. at 552 n. 2. Here, a grandfather has established a legally enforceable right to visit his grandchild, and the trial court has determined that a stepfather's subsequent adoption should not cut off that right, because this particular grandparent-grandchild relationship is important to the well-being of this particular child. That determination should be treated with the utmost deference.
Because I believe that the trial court should be affirmed, I dissent.[1]
NOTES
[1] Black's Law Dictionary 783 (5th ed. 1979), defines "kin or kindred" as:

"Relation or relationship by blood or consanguinity. Relatives by blood; by birth. May be either lineal (ascending or descending) or collateral."
See Mickey v. Beinhauer, 100 Or.App. 529, 532, 786 P.2d 1317, rev. den. 310 Or. 121, 794 P.2d 793 (1990), where we held that a grandparent is "kindred" under ORS 109.041(1).
[2] Despite the statute's seemingly unqualified statement concerning the severance of the adopted person's ties with the natural parent's family as a consequence of adoption, there are exceptions that are not insignificant. For example, Oregon recognizes the right of a child to inherit through a deceased parent, even though the child is subsequently adopted by a stepparent. ORS 112.175 provides, in part:

"(2) An adopted person shall cease to be treated as the child of the person's natural parents for all purposes of intestate succession by the adopted person, the issue and kindred of the adopted person and the natural parents, their issue and kindred, except:
"* * * * *
"(b) If a natural parent of a person dies, the other natural parent remarries and the person is adopted by the stepparent, the adopted person shall continue also to be treated, for all purposes of intestate succession by any person through the deceased natural parent, as the child of the deceased natural parent."
[3] ORS 109.121(7)(a) provides:

"(7) As used in this section:
"(a) `Grandparent' does not include a stepgrandparent."
[4] The dissent's reliance on ORS 109.119 is misplaced. It applies to any person, including a grandfather, who has established a parent-child relationship with a child and gives that person standing to seek custody of, visitation with or guardianship over the child. Petitioner did not acquire visitation rights under that statute and does not even cite it.
[1] I have no quarrel with the generic, as opposed to "clever," prose that is characteristic of most appellate opinions and, in that regard, I accept Judge De Muniz' concurrence. However, to set the record straight, it cannot be said that I have failed to consider the relevant statutes. Having applied those statutes, and having concluded that they require us to focus on the best interests of the child, I have simply reached a different result. That is not a surprising event when the court is called upon to interpret a statute with human, as well as legal, implications.

Addressing the other matter raised by the concurrence, it should be noted that ORS 109.119 applies to grandparents and non-grandparents alike. Indeed, petitioner may seek visitation rights under ORS 109.119(5), regardless of the majority's holding that he is no longer a grandfather. The statute provides:
"(5) Notwithstanding subsection (1) of this section, a person who has maintained an ongoing personal relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality may petition the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the minor child resides, for an order providing for reasonable visitation rights. If the court determines from clear and convincing evidence that visitation is in the best interests of the child and is otherwise appropriate in the case, the court shall grant visitation to the person having the relationship described in this subsection." (Emphasis supplied.)