## CIRCUIT COURT OF THE CITY OF RADFORD

In re Adoption of K.B.M.

April 20, 1993

Virginia Adoption No. 111840
Adoption File No. 95

BY JUDGE CLIFFORD R. WECKSTEIN

These proceedings involve a seven-year-old boy, K.B.M. ("the child"), born on September 10, 1985. The child's paternal aunt and her husband ("petitioners") seek to adopt him. Three of the child's maternal aunts ("the aunts") have petitioned for visitation with the child. The adoption proceeding is pending in the Circuit Court of the City of Radford. The visitation petitions were filed in the Juvenile and Domestic Relations District Court of the City of Radford and are before the Circuit Court on appeal from orders of the district court.

The child's mother died on October 17, 1990. In June of 1991, the child's father entered into a voluntary agreement with the petitioners, providing for the child to be placed in their custody. The child has lived with the petitioners since that time. The child's father died on October 10, 1991. On November 14, 1991, the petitioners filed their petition for adoption in the Circuit Court. On January 22, 1992, the aunts filed their petition for visitation in the Juvenile and Domestic Relations District Court. An interlocutory order of adoption was entered on March 4, 1992. The aunts, who did not initially have notice of the adoption proceedings and do not contest the adoption, seek the right to visit with the child and have him visit with them, notwithstanding the entry of any adoption order.

Having considered the memoranda and oral arguments of counsel, the authorities cited by counsel, and other authorities from throughout the United States, I now conclude:

(1) The entry of an interlocutory order of adoption did not terminate the right of the child's birth relatives to petition for, and be granted, visitation with the child.

(2) It is not necessary for the child's birth relatives to intervene in the adoption proceeding in order for them to preserve their rights to seek visitation.

(3) The entry of a final order of adoption will not terminate the right of the adopted child's birth relatives to seek and be granted visitation with the child.

(4) It is appropriate both to grant the adoption and to hold further hearings concerning visitation.

Many states, either by statute or judicial decision, have addressed the question of whether birth relatives of an adopted child may petition for visitation rights following adoption. In a minority of these jurisdictions, the rule is that adoption severs all ties of the original-child relationship and terminates any potential visitation rights of persons not related to the adoptive parents. *See, e.g., Lipginski v. Lipginski,* 476 N.E.2d 924 (Ind. App. 1985) (adoption "severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another"); *In re Adoption of Ridenour,* 574 N.E.2d 1055 (Ohio 1991) (termination of rights of biological or other legal parents of adopted person renders adopted person a stranger to his former relatives); Or. Rev. Stat. § 109.119; *In re Visitation of Grant,* 836 P.2d 167 (Or. App. 1992) (grandparent was no longer related to child and therefore had no visitation rights, where grandparent's daughter-in-law and new husband had adopted grandchild); *In re Shirey,* 786 P.2d 1317 (Or. App. 1989) (effect of adoption decree is to terminate relationship between adopted persons and natural parents, their descendants and kindred).

The majority rule, however, allows post-adoption visitation of the adopted child by certain relatives and other persons interested in the child's welfare. In those states which allow visitation by the child's relatives, the relatives who may petition for visitation with the child, and the circumstances under which those relatives may petition, vary widely according to the language of the particular state's statute. *See, e.g.,* Ala. Code § 26–10A-30 (allowing post-adoption visitation rights for natural grandparents of adoptee where adoptive parents are stepparent, grandfather, grandmother, brother, half-brother, sister, half-sister, aunt or uncle and respective spouses); Alaska Stat. § 25.23–130 ("[n]othing in this chapter prohibits an adoption that allows visitation between the adopted person and that person's natural parents or other relatives"); Ariz. Rev. Stat. Ann. § 24–337.01 (apparently allowing

grandparents and great-grandparents to seek visitation rights after stepparent adoptions); *Grob v. Huffman*, 218 Cal. Rptr. 659 (Cal. App. 1985) (allowing siblings, grandparents and great-grandparents of adopted unmarried minor child to seek visitation with child where child's father or mother is deceased and child is adopted by stepparent or grandparent); Del. Code Ann. 13 §§ 722, 728, 919; *Rogers v. Trent*, 594 A.2d 32 (Del. 1991) (allowing visitation of adopted child if visitation in best interest of child); Fla. Stat. § 752.01 (allowing post-adoption petition for visitation by grandparent of minor child); *In re R.C.E., III, and C.D.E.*, 535 So. 2d 673 (Fla. App. 1988); *Beard v. Hamilton*, 512 So. 2d 1088 (Fla. App. 1987); Ga. Code Ann. § 19–7-3 (allowing visitation by grandparent only where child adopted by blood relative); *Campbell v. Holcomb*, 388 S.E.2d 65 (Ga. App. 1989); *Heard v. Coleman*, 354 S.E.2d 164 (Ga. App. 1987); *Mitchell v. Erdmier*, 320 S.E.2d 163 (Ga. 1984); Ill. Rev. Stat. Ch. 750 para. 607 (allowing post-adoption visitation of child by grandparents, great-grandparents and siblings where visitation is in best interest of child); *In re A.C. and L.C.*, 428 N.W.2d 297 (Iowa 1988) (providing for grandparent visitation rights when stepparents adopt child); *Recknagel v. Roberts*, 465 So. 2d 844 (La. App. 1985) (trial court could allow visitation by paternal aunt and maternal grandmother, where in best interest of child); Minn. Stat. § 257.022 (providing for visitation rights of child's grandparents and great-grandparents where child's parent is deceased and visitation in best interest of child); *In re Adoption of a Minor*, 558 So. 2d 854 (Miss. 1990) (allowing grandparent visitation rights where parents had abandoned child or proven unfit to have custody of child); *Olson v. Flinn*, 484 So. 2d 1015 (Miss. 1986) (same); Mont. Code Ann. § 40-9–102 (providing for grandparent visitation where child adopted by stepparent or grandparent); N.H. Rev. Stat. Ann. § 458:17-d (allowing adoptive and natural grandparent visitation of child); N.M. Stat. Ann. § 40-9–2 (allowing grandparent visitation privileges where one or both parents of minor child are deceased); N.Y. Fam. Ct. Act § 651 (allowing applications by grandparent for visitation rights); *Ray v. Ray*, 407 S.E.2d 592 (N.C. App. 1991) (step-grandmother is "other person" entitled to institute action seeking visitation); *In re K.S., T.W. & G.S.*, 654 P.2d 1050 (Okla. 1992) (grandparent could petition for visitation rights only where child's parent is deceased or divorced); *Suroviec v. Mitchell*, 500 A.2d 894 (Pa. Super. 1985) (allowing grandparent visitation of child where child not adopted by strangers); *Puelo v. Forgue*,

610 A.2d 124 (R.I. 1992) (visitation rights of grandparents survived subsequent adoption decree); Utah Code Ann. § 30–3-5 (stating "[i]n determining visitation rights of parents, grandparents, and other relatives, the court shall consider the welfare of the child); Wis. Stat. Ann. § 48.925 (allowing visitation petition by "relative who has maintained a relationship similar to a parent-child relationship with a child who has been adopted by a stepparent or relative"); *In re Grandparental Visitation of C.G.F., H.F. & F.F.*, 483 N.W.2d 803 (Wis. 1992) (grandparents could seek visitation with deceased son's child even following child's adoption by stepfather); *In re Custody of D.M.M.*, 404 N.W.2d 530 (Wis. 1987).

Virginia Code § 63.1–223 (Cum. Supp. 1992) provides that:

> [a]ny child adopted under the provisions of this chapter shall, from and after the entry of the interlocutory order or from and after the entry of the final order where no such interlocutory order is entered, be, *to all intents and purposes, the child of the person or persons so adopting him* (emphasis added).

Citing this statute, our Court of Appeals, in *Cage v. Department of Social Services*, 13 Va. App. 246, 249, 410 S.E.2d 405 (1991), held that, following adoption, a biological parent is:

> divested by statute of "all legal rights and obligations in respect" to the children and the children are "free from all legal obligations of obedience and maintenance in respect" to her . . . . The children become, "to all intents and purposes," children of the adoptive parents. (Citation omitted.) *See also Martin v. Department of Social Services*, 3 Va. App. 15, 20–21, 348 S.E.2d 13 (1986) (parent becomes legal stranger to child following termination of parental rights); *Lowe v. Department of Public Welfare*, 231 Va. 277, 280, 232 S.E.2d 70 (1986) (termination of parental rights forever severs ties between parent and child and causes parent to become a legal stranger to child).

In matters concerning visitation, the Virginia courts have noted that:

> [t]he common law right of visitation extends only to parents. *Absent an express statutory grant of jurisdiction*, the courts may not order visitation with a child by a non-parent over the

objection of the custodial parent. *West v. King*, 220 Va. 754, 756, 263 S.E.2d 386, 387 (1980).

*Kogan v. Ulerick*, 13 Va. App. 595, 597, 405 S.E.2d 441 (1991) (emphasis added). "[T]he welfare and best interests of the child are the 'primary, paramount, and controlling consideration[s]'." *Id.* at 596 (quoting *Mullen v. Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948)).

Virginia Code § 16.1–241(A) (Cum. Supp. 1992) expressly grants the juvenile court authority to adjudicate any petition for visitation "filed *at any time by any party with a legitimate interest therein.*" (Emphasis added.) The statute further provides that the term:

> party with a legitimate interest *shall be broadly construed and shall include, but not be limited to*, grandparents, stepparents, former stepparents, *blood relatives and family members*. (Emphasis added.)

The language of § 16.1–241 is extraordinarily broad: On its face, this Virginia statute appears to provide a trial judge more discretion to grant visitation rights than does the visitation statute of any other state, *see above*. All of the other states impose restrictions, either on the class of persons who may petition for visitation, or the circumstances under which they may petition. Virginia does neither. Virginia's sole restriction is that the persons petitioning have a "broadly construed" "legitimate interest."

There is a strong presumption in Virginia law that a statute means what it says. *See, Graham v. Peoples Life Ins. Co.*, 7 Va. App. 61, 66, 372 S.E.2d 161, 164 (1988); *Kian v. Kefalogiannis*, 158 Va. 129, 145, 163 S.E. 535, 541 (1932).

The evolution of Virginia law from *West, infra*, through *Kogan, supra*, to the post-*Kogan* amendments to § 16.1–241, demonstrates a legislative intent that this statute, written broadly, be construed broadly. The statute, in its present and applicable form, does not limit the circumstances under which a "party with a legitimate interest" may file a petition for child visitation. The statute, by its terms, provides for petition "at any time," a phrase that self-evidently is broad enough to encompass post- as well as pre-adoption temporal periods. By its own terms, the statute requires that trial judges construe broadly the term "party with a legitimate interest," a "term *not limited to those enjoying a family relationship.*" Code § 16.1–241 (emphasis added).

On the facts of the case before me, I am satisfied that the aunts are parties "with a legitimate interest" in having visitation rights with the child.[1] Though the entry of adoption orders severs, under § 63.1–223, the legal-familial relationship between the child and the aunts, it does not terminate their "legitimate interest" in the child's welfare and well-being; it does not terminate their rights "at any time" to seek visitation. I am impelled to the conclusion that Code § 16.1–241(A) is precisely the "express grant of statutory jurisdiction" of which the appellate courts spoke in *West v. King, supra,* and *Kogan v. Ulerick, supra.* "Where two statutes appear to conflict, they should be construed, if reasonably possible, to give force and effect to each one. *Board of Supervisors v. Marshall,* 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975)." *Penton v. City of Norfolk,* ___ Va. App. ___, 428 S.E.2d 309, 311 (Record No. 1763–91–1 and 2081–91–1, March 23, 1993), slip op. at 5. The construction that the aunts urge in this case gives force and effect to both § 16.1–241 and § 63.1–223. It is natural, reasonable, logical, and unstrained and is the construction that I adopt.

There is no question that the adoption is in the child's best interest, and there is no question that the petitioners are superlatively qualified and fit to adopt. Therefore, I will enter a final order of adoption, having received the required report from the Department of Social Services, recommending such adoption, the period for the Commissioner's review having elapsed. The requests to intervene in the adoption proceeding (which initially were prompted by my suggestion at a pretrial conference) will be denied as unnecessary. The request that I conduct a visitation hearing will be granted . . . . Until that hearing is held, the stay entered by the judge who formerly presided in this case will remain in effect.

---

[1] Counsel for the aunts assert that evidence adduced at earlier hearings (before I was designated to preside in these cases) demonstrated that, before the death of his parents, the child had a close relationship with the aunts; that he lived near them and spent much time with them. Petitioners' counsel, while denying that this evidence is relevant, has not disputed the assertion that this is the evidence. For the purpose of the threshold determination that the aunts are persons with a legitimate interest, I assume that these facts are in evidence. One who is a "legal stranger" to a child may nonetheless have a "legitimate interest" in the child's welfare and best interests. In this case, I am not called upon to decide whether blood ties alone might be sufficient to demonstrate the requisite interest, or whether one who is a "legal stranger" may be a "blood relative" under § 16.1–241.