COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Petty
Argued by teleconference


CAMPBELL COUNTY DEPARTMENT
   OF SOCIAL SERVICES

v.      Record No. 2349-07-3

WILLIAM JAMES ROBERTS, JR.                                    MEMORANDUM OPINION[*] BY
                                                             JUDGE LARRY G. ELDER
LADONNA MICHELLE NOWLIN                                          MAY 6, 2008

v.      Record No. 2531-07-3

CAMPBELL COUNTY DEPARTMENT
   OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                              J. Samuel Johnston, Jr., Judge

              David W. Shreve; George W. Nolley, Guardian *ad litem* for the
              minor child, for Campbell County Department of Social Services.

              Curtis L. Thornhill (Berger & Thornhill, on brief), for William
              James Roberts, Jr.

              Annabel Irene Maley for Ladonna Michelle Nowlin.


        The Campbell County Department of Social Services (DSS) appeals from a decision of

the circuit court concluding DSS failed to present sufficient evidence to establish a *prima facie*

case supporting termination of the parental rights of William James Roberts, Jr. (father), to his

now twenty-month-old daughter, E.L.  In a related appeal, which we consolidate with DSS's for

purposes of decision, E.L.'s mother, Ladonna Michelle Nowlin (mother), appeals the

determination made on the merits in the same proceeding that the evidence supported

--------
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

termination of her parental rights.  Mother argues termination of her parental rights was not in the best interests of the child given that the court did not terminate father's parental rights and that mother and father have expressed an intent to remain together as a couple.[1]  As to DSS's appeal, we hold the court erred in granting father's motion to strike because DSS's evidence, viewed in the light most favorable to DSS, established a *prima facie* case supporting termination of father's parental rights.  Thus, as to DSS's appeal, we reverse and remand for additional proceedings consistent with this opinion.  As to mother's appeal, we hold the court did not err in the way mother alleges, and we affirm the ruling terminating her parental rights.

I.

A.

DSS'S APPEAL OF THE RULING
ON FATHER'S MOTION TO STRIKE

In ruling on a motion to strike at the end of a plaintiff's case-in-chief, a court must "evaluate[] whether [the] plaintiff has made a *prima facie* case."  Klein v. Klein, 49 Va. App. 478, 481, 642 S.E.2d 313, 315 (2007).  In doing so,

> the trial court [must] accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a [fact finder] might draw therefrom which would sustain the plaintiff's cause of action. The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense.

---

[1] Pending is DSS's motion to dismiss mother's appeal based on mother's failure to cite sufficient support for the arguments she makes on brief.  As the Supreme Court has recently made clear, dismissal is not an appropriate remedy for a mere failure to cite authority in support of a question presented.  Jay v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (Apr. 18, 2008) (holding the requirements of Rule 5A:20(e) are not jurisdictional, rendering dismissal for their violation inappropriate, but noting that the Court may "require an appellant to re-submit the . . . opening brief . . . [or] may treat treat a question presented as waived").  Although mother's citation to authority on brief is sparse, it is not entirely lacking, and the issue she raises is largely one of first impression.  Thus, we decline to consider her question presented as having been waived, and we consider it on the merits.

Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997); see Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998) (noting that this standard is the same in jury and bench trials). "[T]he trial judge is obliged to 'adopt those inferences most favorable to the party whose evidence is challenged, even though he may believe different inferences are more probable.'" Butler v. Yates, 222 Va. 550, 553-54, 281 S.E.2d 905, 906 (1981) (quoting Lane v. Scott, 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979)). "[T]he trial court should in every case [deny] the motion where there is any doubt on the question. 'The . . . motion . . . should be [granted] only [in] those cases in which it is *conclusively apparent* that [the] plaintiff has proven no cause of action against [the] defendant.'" Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985) (quoting Leath v. Richmond, Fredericksburg & Potomac R.R. Co., 162 Va. 705, 710, 174 S.E. 678, 680 (1934)) (emphasis added).

Applying this standard to the evidence DSS presented in seeking to terminate father's parental rights, we hold the trial court erred in concluding DSS failed to present a *prima facie* case for termination under Code § 16.1-283(B) or (C).[2]

Under Code § 16.1-283(B), phrased in the conjunctive, residual parental rights may be terminated if clear and convincing evidence demonstrates that it is in the child's best interests and that, under (B)(1), the neglect and abuse suffered by the child presents a serious and substantial threat to her life, health, or development and, under (B)(2), it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to her parent within a reasonable period of time. The statute also provides that the following constitutes *prima facie* evidence to meet the subsection (B)(2) prong:

---

[2] Of course, the trial court would be free to make a contrary finding after hearing all the evidence.

- 3 -

c. The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

Code § 16.1-283(B)(2). A court also may terminate parental rights under subsection (C), phrased in the disjunctive, if it finds by clear and convincing evidence that termination is in the best interests of the child and that *either*:

1. The parent . . . ha[s], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; *or*

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Code § 16.1-283(C) (emphasis added).

Here, the trial court granted father's motion to strike based on its finding that DSS did not make a *prima facie* showing that (1) DSS provided the services necessary or (2) that father failed

to cooperate with the services provided.[3]  We hold that, under the standard applicable on a motion to strike made at the close of a plaintiff's case, which required the trial court to view the evidence and all inferences therefrom in the light most favorable to DSS, the trial court's ruling granting the motion to strike DSS's case as to father was error because that evidence established a *prima facie* case for termination under both subsection (B) and subsection (C) of Code § 16.1-283.

As to subsection (B)(1)'s requirement for proof of neglect or abuse that presented a serious and substantial threat to the child's life, health or development, the evidence showed that, at the time of the removal, the family was living in an older-model trailer with deteriorating flooring.  The flooring was so soft in many places that its occupants had created a narrow path of two-inch-by-four-inch boards to enable them to walk from room to room without falling through the deteriorating flooring.  The condition of the flooring subjected the infant E.L. to a risk of harm due to a fall by a parent attempting to traverse this flooring while carrying her, and it presented an even greater, more direct risk of harm to her when she began to crawl and walk.  Neither parent was employed at the time, other than performing some "odd jobs."

Additional undisputed evidence established that two of the three adult residents of the trailer were prone to violence.  The trailer was owned by mother's brother, who also lived there.  Mother's brother, an admitted user of crack cocaine, did not wish to have mother and father share the trailer with him, and he was convicted of threatening father with a knife as a result of an incident that occurred while mother was pregnant with E.L.  Mother, too, was found to have

---

[3] The transcript of the proceedings indicates that the trial court's pronouncement from the bench included a finding that DSS had offered services and that father had not availed himself "completely" of the services offered, which it found was the fault of both father and of DSS.  It also stated a belief that father "has a chance to redeem himself" and that "the burden of proof has not been met . . . as far as the father goes."  To the extent the trial court's statements from the bench conflict with its written order, we must view the written order as embodying the court's decision.  See, e.g., Kern v. Commonwealth, 2 Va. App. 84, 88, 341 S.E.2d 397, 400 (1986).

battered father in March 2006 while mother was pregnant with E.L., although adjudication was deferred and mother was ordered to attend anger management classes and substance abuse treatment to reduce the likelihood of additional violence. At the time the child was removed, mother had agreed to attend substance abuse counseling to address her years-long cocaine addiction but had failed to appear for her very first session, and father lied to the assigned social worker about mother's attendance at that meeting. Although both parents had agreed that E.L. would be seen at *all* appointments with DSS, father came alone to his very first meeting at DSS's office and did not bring the child. This evidence, viewed in the light most favorable to DSS, established a *prima facie* case of neglect under Code § 16.1-283(B)(1).

Additional evidence established a *prima facie* case under subsection (B)(2), which may be proved with evidence that "the parent . . . , without good cause, ha[s] not responded to or *followed through with* appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child." (Emphasis added); see Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 269-70, 616 S.E.2d 765, 771 (2005) (noting the distinction between subsections (B)(2) and (C)(2) in that (C)(2) "specifically requires a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights" whereas (B)(2) contains no such requirement and merely provides that, where such services *have* been offered, "a parent's inexcusable failure to respond to rehabilitative services offered by DSS or other assisting agencies after the child's removal . . . [is] a *prima facie* ground justifying termination").

Here, DSS offered both parents "[v]isitation, help with finding housing, help with finding a job," and also a "family educator" to help with visitation, parenting skills, and job search and skill development. When social worker Stephanie O'Connor discussed with father and mother

the "services . . . that [she] thought were appropriate that could help them . . . get their [daughter] back," they at no time "express[ed] confusion that they didn't understand what [O'Connor] had planned." Father signed a contract further indicating his awareness of what he needed to do in order to regain custody, including "provid[ing] adequate, safe and sanitary housing," "maintain[ing] consistent contact with [DSS] either by phone or by mail," "maintain[ing] consistent and appropriate visitation with [E.L.]," and "continuing to test negative for drugs." Mother signed a similar contract except that it also required her to complete inpatient substance abuse treatment due to her admitted use of drugs at the time of and shortly after E.L.'s birth. Those contracts also set out that DSS would provide employment referral services, which it did, and would help provide transportation to the parents for matters concerning the child, which the evidence established DSS also did when requested, although father apparently owned or had regular access to an operational vehicle during most of the relevant period.

O'Connor had ongoing difficulty making contact with father and mother, and neither parent maintained regular, weekly contact with DSS as DSS had requested and the parents had agreed to do. The evidence supported a finding that, because of this sporadic contact, O'Connor had difficulty providing father and mother with services in a timely fashion. O'Connor and a second DSS employee, Mark Yudowitch, tried for weeks to contact the parents in order to place a family educator in the home, but O'Connor and Yudowitch were unable to reach them for almost the entire month of December 2006. Some of these difficulties may have been due to the fact that the parents had no phone of their own, but they also failed to exercise the option of communicating with DSS by mail, and even once father obtained a cell phone in early January 2007, his contact with DSS remained very sporadic.

Despite these difficulties, social workers Michelle Dinkle-Lowery and Stephanie O'Connor both "really stressed [to the parents that] they need[ed] to move out of that house," but

the parents never took any concrete steps toward doing so. Dinkle-Lowery originally considered "Section 8 [housing]" as an option for the family, but when she later learned a court had found the evidence sufficient to prove mother had battered father in March 2006, Dinkle-Lowery knew the history of domestic violence would prevent them from qualifying for that type of housing. Father told Dinkle-Lowery just prior to E.L.'s removal in August 2006 that he had a residence in Chase City that might be more suitable but that "there was some problem with the water heater." Despite Dinkle-Lowery's response to father that "that's something that we can help you with or social services [in Chase City] might be able to help you out," father did not further pursue this housing possibility through DSS.

Both parents told O'Connor when they were not working that they did not have the money to move to a different residence, but after both obtained regular employment, they never provided an explanation for why they did not move. Father indicated to O'Connor on March 1, 2007, several months after he obtained full-time employment in the construction field, that he had "a housing prospect" that "should be coming through around March 15th," but he never provided her with any additional information about that prospect and did not move from the trailer with the deteriorating flooring he and mother were sharing with mother's abusive, cocaine-using brother.

Shortly after that time, on March 23, 2007, the same date that the J&DR court entered orders terminating mother's and father's parental rights, father had a drug test that was positive for cocaine. He had two additional positive tests in the months that followed, and when he broached the subject of housing again with DSS in July 2007, on the date of the last hearing on the termination petition in circuit court, father told social worker Carol Booth that "he had located somewhere to rent but had not moved" because he needed help from DSS with the rent. This evidence supported the inference that father's drug use—about which DSS had previously

been unaware because of father's denials and numerous negative drug tests—was adversely affecting his financial ability to obtain suitable housing and that, despite DSS's efforts to help father obtain full-time employment, which he did, "[i]t [was] not reasonably likely that the conditions which resulted in [the neglect or abuse that led to E.L.'s removal] [could] be substantially corrected or eliminated so as to allow the child's safe return to [her] parent or parents within a reasonable amount of time," as provided in Code § 16.1-283(B)(2).

This evidence, viewed as a whole, also constituted a *prima facie* showing that termination was in E.L.'s best interests so that she could remain with her foster family, the only family she had known and the family by whom her older half-siblings had been adopted. See Cage v. Harrisonburg Dep't of Soc. Servs., 13 Va. App. 246, 248, 410 S.E.2d 405, 406 (1991) (holding the statutory scheme does not require a court to segregate evidence as applicable to only showing of best interests and that evidence of circumstances leading to placement and failure to remedy those circumstances may also be relevant to the best interests determination).

Thus, the record establishes that DSS presented a *prima facie* case for termination of father's parental rights under Code § 16.1-283(B) and that the trial court erred in granting father's motion to strike the evidence on this claim. The same evidence and inferences established that DSS presented a *prima facie* case for termination under Code § 16.1-283(C)(2). Termination under (C)(2) may not be effected in the face of "undisputed evidence that a parent has not been offered or provided services," but DSS is not required to "force its services upon an unwilling or disinterested parent." Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 244, 288 S.E.2d 410, 415 (1982).

Finally, DSS also presented a *prima facie* case for termination under Code § 16.1-283(C)(1) because the evidence and inferences, viewed in the light most favorable to DSS, established father's failure "without good cause to communicate *on a continuing and*

*planned basis* with the child for a period of six months." (Emphasis added). Although DSS had offered both parents transportation for visitation and had indicated they could visit weekly, father visited with the child twice in the two weeks following her August 2006 removal and then only three more times before the July 26, 2007 termination hearing in circuit court—once in November 2006, once in February 2007, and once in July 2007. Although father worked only odd jobs until mid-December 2006 and, thus, presumably had a flexible work schedule during that time, he made no effort to visit E.L. regularly or to maintain contact with DSS during the fall of 2006, and O'Connor had ongoing difficulty making contact with him. In addition, father reported not working for the majority of the month of January 2007 but did not exercise visitation at any time during that month, although he had obtained a cell phone by that time, which presumably made it easier for him to contact DSS. Finally, father reported to Yudowitch that, while working for the construction company, "he would be able to [have visitation] without risk with his employer" "as long as he knew . . . about two days before." Despite these statements, father cancelled numerous visitations scheduled for March, April, and June of 2007 ostensibly because he had to work. This evidence, viewed in the light most favorable to DSS, established a *prima facie* case for termination under subsection (C)(1).

Thus, we hold the trial court erred in granting father's motion to strike DSS's evidence, and we reverse and remand for a new trial on DSS's petition to terminate father's parental rights. See, e.g., Izadpanah v. The Boeing Joint Venture, 243 Va. 81, 412 S.E.2d 708 (1992) (remanding for a new trial following reversal of a decision granting the defendant's motion to strike the plaintiff's case in a bench trial).

- 10 -

B.

MOTHER'S APPEAL OF THE TERMINATION OF HER PARENTAL RIGHTS IN
THE ABSENCE OF THE TERMINATION OF FATHER'S PARENTAL RIGHTS

Mother contends "it is not in the best interest of [E.L.] to have her mother's parental rights terminated . . . while preserving the rights of her father" where "her parents are living together and have stated throughout the course of the case that they intend to remain together although they are not married." Mother argues that "[t]he ultimate result of such a decision tends to support the dissolution of the bonds between [mother and father] and as such supports a result in violation of public policy."

We disagree. Merely because father's rights have not been terminated does not mean that they will not be terminated on remand for a new trial[4] or, even if they are not terminated on remand, that father will regain custody of the child. Further, contrary to mother's argument, terminating her parental rights while not terminating father's rights, to the extent that it "tends to support the dissolution of the bonds between [E.L.'s unmarried] parents," does not violate Virginia public policy, which favors marriage over cohabitation. See, e.g., Shelton v. Stewart, 193 Va. 162, 166, 67 S.E.2d 841, 843 (1951). Further, when termination of parental rights becomes necessary, the legislature has specifically provided that "[t]he court may terminate the residual parental rights of one parent without affecting the rights of the other parent." Code

---

[4] It could be argued that mother's appeal is premature or moot based on our ruling remanding father's termination proceeding for a new trial. However, the order terminating mother's parental rights will be a final order when father's new trial is completed, and mother will not be entitled at that time to challenge the termination of her parental rights as that termination relates to the final resolution of father's case. Thus, although the outcome of father's termination proceeding on remand is uncertain, we consider the merits of mother's claim in this appeal. Cf. In re World Times Corp., 7 Va. App. 317, 323-24, 373 S.E.2d 474, 477 (1988) (recognizing as an exception to mootness doctrine the consideration of issues "'capable of repetition yet evading review'" (quoting Globe Newspaper Co. v. Superior Ct., 457 U.S. 596, 603, 102 S. Ct. 2613, 2618, 73 L. Ed. 2d 248, 254 (1982))).

§ 16.1-283(A).  The legislature has made no distinction between cases in which the parents are married or merely cohabiting and those in which they are not.

Here, mother and father were not married, and mother had a demonstrated drug problem spanning at least six years and the birth of three children, including E.L.  Despite the efforts of DSS and the judicial system to provide mother with inpatient drug treatment and anger management assistance, she refused the offered programs and chose instead to serve a jail sentence.  If a court were to find in a future proceeding that the best interests of E.L. would be served by allowing her to continue to maintain a parent-child relationship with her father, whether or not that relationship was custodial and despite the fact that the parent-child relationship with the child's mother had been legally terminated, we do not see how such a conclusion would violate the public policy of the Commonwealth.  Thus, we hold mother's appeal lacks merit, and we affirm the termination of her parental rights.

## II.

In sum, we hold the court erred in granting father's motion to strike because DSS's evidence, viewed in the light most favorable to DSS, established a *prima facie* case supporting termination of father's parental rights under Code § 16.1-283(B) and (C).  Thus, as to DSS's appeal, we reverse and remand for a new trial.  As to mother's appeal, we hold the court's termination of her parental rights while not simultaneously terminating father's did not constitute error, and we affirm the ruling terminating her parental rights.

Record No. 2349-07-3, reversed and remanded.

Record No. 2531-07-3, affirmed.